## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH DAKOTA

| | |
|---|---|
| Lisa Grevlos and Paul Nesheim,<br><br>　　　　　　Plaintiffs,<br><br>v.<br><br>Augustana University,<br><br>　　　　　　Defendant. | Case No.:　__23-cv-4086__<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

### PRELIMINARY STATEMENT

1.　　This Complaint arises out of the termination of two tenured faculty members in Augustana University's School of Music, Dr. Lisa Grevlos and Dr. Paul Nesheim.  Dr. Grevlos and Dr. Nesheim were terminated after a two-year smear campaign headed by Dean Peter Folliard and Dr. Russell Svenningsen, who gradually stripped Dr. Grevlos and Dr. Nesheim of their titles and job duties, and ultimately terminated them.  The terminations occurred in retaliation for Dr. Grevlos and Dr. Nesheim engaging in protected activity, are discriminatory based on their age and sex (as to Dr. Grevlos), and are in violation of numerous provisions of Augustana's Faculty Handbook, which requires that termination of tenured faculty follow specific procedures and only after cause is established.   By the Complaint, Dr. Grevlos and Dr. Nesheim seek recourse for the loss of their high-level positions, damages to their reputation, emotional distress, and violations of their civil rights.

1

## PARTIES

2.      Plaintiff Lisa Grevlos is a natural person who resides at 6404 South Killarney Circle, Sioux Falls, South Dakota, 57108.

3.      Plaintiff Paul Nesheim is a natural person who resides at 1917 East Briar Den Court, Sioux Falls, South Dakota, 57108.

4.      Defendant Augustana University is a university in South Dakota, with its principal place of business at 2001 South Summit Avenue, Sioux Falls, South Dakota 57197.

## JURISDICTION

5.      This Court has original jurisdiction over Plaintiffs' claims arising under Title VII of the Civil Rights Act of 1964 (Title VII) and the Age Discrimination in Employment Act of 1967 (ADEA) pursuant to 28 U.S.C. § 1331, because the claims arise under the laws of the United States.

6.      This Court has supplemental jurisdiction over Plaintiffs' breach of contract claims pursuant to 28 U.S.C. § 1367, because the claims arise under the same case or controversy as Plaintiffs' Title VII and ADEA claims.

7.      Venue is proper in this District under 28 U.S.C. § 1391, because Plaintiffs and Defendant reside in this District and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

## FACTS

8.      Dr. Grevlos received her Doctorate of Arts in voice performance from the University of Northern Colorado in 2005, Masters of Music in voice performance and

4863-2672-7781, v. 1

choral conducting from Northwestern University in 1991, and Bachelor of Arts in music education from Augustana University in 1987. She has thirty (30) years of teaching experience at Augustana University, including seventeen (17) years as a tenured faculty member.

9.     During her tenure at Augustana, Dr. Grevlos was appointed Director of Vocal Studies in 2010, promoted to full professor in 2015, appointed Director of the Augustana Summer Music Camp in 2017, and Chair of the Music Department/School of Music in 2018.

10.     In every official evaluative process, including summative student and department chair evaluations, and pre-tenure, tenure, and promotion requirements, as well as state, regional, and national recognition and awards, Dr. Grevlos has been found to be highly competent and excellent in her work, scholarship, and service as a music faculty member.

11.     At the time of her termination, Dr. Grevlos was the most senior full-time faculty member in the School of Music, and the only tenured female full-time faculty member in the Music Department/School of Music since 2006.

12.     Dr. Grevlos is 58 years old.

13.     Dr. Nesheim received his Doctorate of Musical Arts in choral conducting with a minor in vocal performance in 1991, Master of Music in choral music from Arizona State University in 1986, and Bachelor of Arts in music education from St. Olaf College in 1982. He is the author of a book on vocal technique that is widely used and highly regarded

in the profession. Prior to his hire at Augustana University, Dr. Nesheim served as Director of Choral Activities for Minnesota State University Moorhead.

14.     In 2012, Dr. Nesheim was hired by Augustana as a professor and the fifth conductor of the Augustana Choir. In 2015, he was granted tenure and promoted to full professor. In 2017, he was appointed Director of Choral Activities for the Music Department/School of Music.

15.     During his tenure at Augustana, Dr. Nesheim led the Augustana Choir on two successful European tours and a number of domestic tours. He conducted twice in Carnegie Hall, including once in a performance that included the Augustana Choir. Under his leadership, the Augustana Choir has performed by invitation at a state music conference and by adjudication at a regional conference. Dr. Nesheim has also served as president of the South Dakota state chapter of the American Choral Directors Association.

16.     In every official evaluative process, including summative student and department chair evaluations, and pre-tenure, tenure, and promotion requirements, as well as state, regional, and national recognition and awards, Dr. Nesheim has been found to be highly competent and excellent in his work, scholarship, and service as a music faculty member.

17.     Dr. Nesheim is 62 years old.

18.     In early 2020, Augustana University began the hiring process for the inaugural dean of the new School of Music. President Stephanie Herseth Sandlin selected Dr. Russell Svenningsen and Dr. Brian Hanegan as the only two music faculty members to serve on the dean search committee. Dr. Svenningsen was tenured whereas Dr. Hanegan

was tenure-track but not yet tenured. Dr. Grevlos, then Chair of the Music Department, was not included or consulted in the process in violation of the AU Faculty Handbook.

19.     In March 2020, Dr. Nesheim and Dr. Rick Andrews submitted letters of recommendation for Dr. Grevlos' candidacy for dean of the School of Music.

20.     The search committee selected Dr. Peter Folliard and Dr. Natalie Williams as the final two candidates for dean of the School of Music. Dr. Williams was an external candidate. Dr. Folliard was an internal candidate previously hired by Augustana as interim director of orchestras in 2017 and director of orchestras in 2018. Dr. Folliard was tenure-track but not yet tenured.

21.     On May 14, 2020, Dr. Grevlos, Dr. Nesheim and Dr. Andrews participated in interviews of Dr. Folliard and Dr. Williams with other full-time music faculty members, during which the professors asked the candidates standard interview questions.

22.     During Dr. Folliard's interview, Dr. Grevlos asked him to provide examples of his leadership style in higher education and to discuss thoughts about recruitment given the drop in high school graduates seeking admission. Dr. Nesheim asked Dr. Folliard how he felt about fitting into a religious institution, as well as how he felt about the scope of the position, which added administrative duties to a busy teaching schedule. Dr. Andrews (age 62) asked Dr. Folliard if he was comfortable mentoring faculty during the tenure process when he had not yet gone up for pre-tenure.

23.     On May 21, 2020, an anonymous formal complaint was filed with the Faculty Personnel Council (FPC) alleging that Dr. Grevlos, Dr. Nesheim, and Dr. Andrews had

5

engaged in unprofessional, confrontational behavior meant to undermine Dr. Folliard during his interview.

24.     On May 27, 2020, Dr. Folliard was announced as dean of the School of Music.

25.     In June 2020, the FPC formally reprimanded Drs. Grevlos and Nesheim, despite also finding that they did not "overtly violate common standards of professionalism." Dr. Andrews was found to have violated professional standards and reprimanded. Dr. Andrews took early retirement from Augustana shortly thereafter.

26.     Dr. Grevlos, Dr. Nesheim, and Dr. Andrews filed a grievance regarding the anonymous complaint and reprimand. In October 2020, Provost Colin Irvine informed Dr. Grevlos that "from the standpoint of the university, the issue was and remains settled; and you … are in good standing with the University."

27.     Drs. Nesheim and Grevlos later learned that Dr. Svenningsen and one other person had brought the complaint against the three faculty members.

28.     After Dr. Folliard was appointed dean in summer of 2020, he repeatedly asked Drs. Grevlos and Nesheim why Dr. Svenningsen was "so angry." Dr. Folliard told Dr. Nesheim that Dr. Svenningsen's behavior was not professional and asked Dr. Nesheim to deal with Dr. Svenningsen.

29.      Dr. Nesheim learned that Dr. Svenningsen was angry because Dr. Nesheim had previously refused to support Dr. Svenningsen's desire to unilaterally remove Dr. Grevlos as director of the Angelus Choir and to take her place. Dr. Nesheim had not supported Dr. Svenningsen's request because he believed Dr. Grevlos' work with the

4863-2672-7781, v. 1

Angelus Choir was demonstrably excellent, and he disagreed with the removal of a director of a premier choir without any due process.

30.     In September 2020, Dr. Nesheim attempted to bring Dr. Svenningsen, Dr. Grevlos and Dr. Folliard together to discuss Dr. Svenningsen's concerns, but Dr. Svenningsen refused to meet with Dr. Grevlos and proceeded to harshly criticize both her and Dr. Nesheim.

31.     Dr. Svenningsen and Dr. Folliard excluded Dr. Grevlos from scheduled choral/vocal area meetings. Dr. Svenningsen said they were excluding Dr. Grevlos so they (males) could engage in "real talk." Dr. Folliard told Dr. Nesheim that including Dr. Grevlos could make the meetings become "emotional."

32.     In March 2021, after observing a pattern of disparagement and exclusion toward Dr. Grevlos by Dr. Svenningsen and Dr. Folliard for several months and believing she was being unfairly targeted, Dr. Nesheim informed Dr. Grevlos of the disparaging statements being made about her and the meetings from which she had been excluded.

33.     Dr. Nesheim then facilitated an evaluation of Dr. Grevlos by three outside experts in order to obtain an objective assessment to address Dr. Svenningsen's concerns. The experts evaluated recordings of the Angelus Choir under Dr. Grevlos' direction and rated her work as excellent.

34.     On March 19, 2021, Dr. Folliard issued a written reprimand to Dr. Nesheim for sharing the criticism with Dr. Grevlos and facilitating the independent evaluation, even though Dr. Folliard had tasked Dr. Nesheim with addressing the issues raised by Dr. Svenningsen.

35.     On April 6, 2021, Dr. Grevlos filed a complaint under Title IX alleging discrimination and retaliation by Drs. Folliard and Svenningsen and informed Augustana Title IX officials that Dr. Nesheim would be a witness for her.

36.     Three days later, Dr. Folliard began the process to remove Drs. Nesheim and Grevlos from their various titles, positions, and teaching loads.

37.     Dr. Nesheim was removed as Director of Choral Activities and artistic director of Vespers. Dr. Folliard took over as artistic director of Augustana Christmas Vespers and excluded Dr. Nesheim entirely from the planning process.

38.     Prior to Dr. Nesheim's removal as artistic director of Vespers, Dr. Folliard had commented to him that anonymous leaders said Vespers was "tiring" and that Dr. Svenningsen called it "old-fashioned."

39.     Dr. Grevlos was removed as Department Chair, Director of Vocal Studies, and Director of the Augustana Summer Music Camp. Dr. Grevlos lost a portion of her salary as a result of her demotion.

40.     Dr. Grevlos' annual salary, based on 29 years of teaching, was used as a basis to change her teaching load and remove students from her courses, while younger male colleagues' teaching loads stayed the same.

41.     Dr. Folliard subsequently appointed Dr. Svenningsen to be the new Director of Vocal Studies. The Augustana Summer Music Camp led by Dr. Grevlos was eliminated and separate summer camps were established in 2022 and led by younger male faculty.

42.     In July 2021, Dr. Grevlos was notified that her Title IX complaint would not proceed and her concerns would be sent to Provost Irvine.

4863-2672-7781, v. 1

43.     In September 2021, after repeated requests, Dr. Grevlos received the Title IX report from Augustana that consisted of negative comments, with no evidentiary support, about her and Dr. Nesheim by Drs. Folliard and Svenningsen.

44.     On November 12, 2021, Dr. Grevlos was called to a meeting with Provost Irvine and Vice President of Human Resources Deanna Versteeg where Irvine threatened Dr. Grevlos with dismissal if she continued her "pattern of discontent", referring to her complaints regarding her treatment by Drs. Folliard and Svenningsen.

45.     Dr. Grevlos was also told that her complaints were "problematic."

46.     On November 19, 2021, Dr. Grevlos filed a complaint with the U.S. Office for Civil Rights (OCR) regarding Provost Irvine's threat and her continued treatment by Drs. Folliard and Svenningsen.

47.     On January 4, 2021, Dr. Nesheim also filed a complaint with OCR regarding his treatment by Drs. Folliard and Svenningsen related to his support of Dr. Grevlos and participation as a witness in her Title IX complaint.

48.     On January 14, 2022, Provost Irvine sent a follow-up letter to Dr. Grevlos informing her that Dr. Folliard had been given authority to "correct course where necessary" in the School of Music.

49.     OCR referred Dr. Grevlos' and Dr. Nesheim's complaints to the EEOC in January 2022 and notified Augustana accordingly.

50.     On February 25, 2022, Dr. Folliard removed Dr. Nesheim as conductor of the Augustana Choir, replacing him with Dr. Svenningsen, and removed Dr. Grevlos as conductor of the Angelus Choir and director of Opera Theatre—thereby removing her from

4863-2672-7781, v. 1

the choral area entirely. Dr. Folliard assigned Dr. Nesheim to conduct the Angelus Choir instead.

51.     Due to a mistake in the referral of the charges from the OCR to the EEOC, Drs. Grevlos and Nesheim had to refile their charges with the EEOC in June 2022.

52.     On August 1, 2022, Augustana submitted its position statements in response to the EEOC complaints.

53.     On August 9, 2022, Dr. Svenningsen sent an email to all new and returning AU singers informing them that all choirs would participate in Augustana Christmas Vespers.

54.     On August 16, 2022, Dr. Svenningsen sent an email to Dr. Nesheim stating that, contrary to what he had told all AU singers one week earlier, the Angelus Choir would not—for the first time in over two decades—participate in Vespers, the event Dr. Nesheim had led since 2012.

55.     After an article on Angelus' exclusion from Vespers was published in the Augustana Mirror student newspaper, Dr. Folliard invited Angelus back to the 2022 Vespers.

56.     On October 21, 2022, Dr. Grevlos and Dr. Nesheim submitted rebuttals to Augustana's EEOC position statement.

57.     On December 3, 2022, Augustana University's counsel was informed that Dr. Grevlos was requesting an extension of an EEOC deadline to submit a reply to an inquiry by the agency.

4863-2672-7781, v. 1

58.     On December 5, 2022, Dr. Folliard claimed he received three written complaints from "anonymous colleagues" expressing concerns about recordings Dr. Nesheim took on his phone during Vespers rehearsals.

59.     On January 18, 2023, Dr. Nesheim was called to a meeting with Dr. Folliard and Ms. Versteeg regarding the recordings of Vespers rehearsals. Dr. Folliard stated the anonymous complainants feared that Dr. Nesheim would "weaponize" the videos he had taken to harm their careers. Dr. Nesheim explained the videos were taken for educational purposes and to show his wife.

60.     Dr. Nesheim later learned that the complainants were Dr. Svenningsen, Dr. Hanegan and Dr. Christopher Unger.

61.     The Augustana School of Music Facebook page has many concert and rehearsal videos of Augustana faculty conductors and students taken by others besides Dr. Nesheim. Many of the videos were taken on phones. Other music faculty members, including Dr. Hanegan and Dr. Natalie Campbell, have recently taken performance or rehearsal video with their phones of Dr. Svenningsen conducting the Augustana Choir. President Herseth Sandlin posted videos she took of Vespers on Twitter in 2018, 2019, and 2021, including video of Dr. Nesheim conducting Vespers in 2018.

62.     On January 23, 2023, Dr. Nesheim was suspended allegedly for taking videos of choir rehearsals. The letter informing Dr. Nesheim of his suspension did not cite any university policy violation by Dr. Nesheim.

63.     On January 27, 2023, Dr. Grevlos was called into a meeting with Provost Irvine and Ms. Versteeg, during which Irvine shared that Dr. Folliard had expressed that

11

she was not demonstrating professionalism and collegiality with her colleagues in the department.

64.     Augustana then hired an investigator, Lisa Marso, to conduct an investigation into Dr. Nesheim's conduct of recording rehearsals and performances and to determine "whether there is any significant dysfunction in the School of Music" and if so, what are the causes and solutions.

65.     Many of the individuals interviewed by Ms. Marso are former Augustana employees with a close relationship to another former employee, Bruce Ammann, who was terminated (and later allowed to resign) for making demonstrably false statements about Dr. Grevlos. Numerous "witnesses" in the report are openly biased against Dr. Grevlos, and the "findings" in the report are overwhelmingly based on hearsay and gossip rather than firsthand knowledge of Dr. Grevlos and Dr. Nesheim's colleagues. Some of the individuals interviewed had not even had contact with them, and the conduct described (for example, behavior in faculty meetings) never occurred.

66.     On February 24, 2023, Dr. Grevlos and Dr. Nesheim requested a notice of right to sue from the EEOC.

67.     On February 25, 2023, Dr. Folliard emailed Dr. Grevlos regarding an anonymous complaint he received from a student about her teaching.

68.     On February 27, 2023, the EEOC notified Augustana of Dr. Grevlos' and Dr. Nesheim's requests for notices of right to sue.

69.     On February 27, 2023, President Herseth Sandlin issued a dismissal for cause letter terminating Dr. Nesheim effective May 24, 2023. Ms. Herseth Sandlin claimed that

4863-2672-7781, v. 1

Dr. Nesheim presented a "harm" to the university, faculty and staff, but cited no university policy violation as required for dismissal of a tenured professor.

70.     On March 3, 2023, President Herseth Sandlin issued a dismissal for cause letter terminating Dr. Grevlos effective May 24, 2023. Ms. Herseth Sandlin claimed that Dr. Grevlos presented a "harm" to the university, faculty and staff, but cited no university policy violation as required for dismissal of a tenured professor.

71.     On March 27, 2023, the American Association of University Professors (AAUP) sent a letter to Ms. Herseth Sandlin expressing concern that the terminations of Dr. Nesheim and Dr. Grevlos violated their due process rights outlined in the 1940 Statement of Principles on Academic Freedom and Tenure and affirmed in the AU Faculty Handbook.

72.     Both Dr. Nesheim and Dr. Grevlos filed grievances with the Faculty Grievance Committee (FGC) regarding their terminations.

73.     The FGC held a grievance hearing on May 5, 2023. Dr. Folliard, Dr. Svenningsen, and Dr. Unger served as witnesses for Augustana.

74.     On May 10, 2023, the FGC issued their findings in support of the dismissals for cause of Dr. Grevlos and Dr. Nesheim.

75.     On May 23, 2023, Dr. Grevlos and Dr. Nesheim filed with the EEOC charges of discrimination and retaliation regarding their respective terminations.

76.     On May 26, 2023, the EEOC issued notices of right to sue for Dr. Grevlos and Dr. Nesheim.

## CAUSES OF ACTION

### COUNT I
### RETALIATION UNDER TITLE VII
### (By Dr. Grevlos and Dr. Nesheim)

77.     Plaintiffs restate and reallege Paragraphs 1 to 76 of their Complaint as though fully stated herein.

78.     Title VII of the Civil Rights Act of 1964 prohibits an employer from retaliating or discriminating against an employee because he or she has either opposed an unlawful employment practice; or made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing regarding an unlawful employment practice.  42 U.S.C. § 2000e-3a.

79.     Title VII claims may be proven through either direct or circumstantial evidence.

80.     Direct evidence of retaliation is evidence that demonstrates a specific link between a materially adverse action and the protected conduct, sufficient to support a finding by a reasonable fact finder that the harmful adverse action was in retaliation for the protected conduct.

81.     If evidence is circumstantial, a plaintiff must demonstrate (1) they engaged in protected conduct; (2) they suffered an adverse employment action; and (3) the adverse action was causally linked to the protected conduct.

82.     Dr. Grevlos engaged in protected conduct when she filed a Title IX Complaint, a complaint with the OCR, and charges with the EEOC.

14

83.     After she filed her Title IX complaint, Dr. Grevlos was removed as Department Chair, Director of Vocal Studies, and Director of the Augustana Summer Music Camp. Dr. Grevlos lost a portion of her salary as a result of her demotion. Subsequently, Dr. Grevlos was removed as the Director of Angelus Choir.

84.     In response to her Title IX complaint, Augustana told Dr. Grevlos that she would be terminated for cause if her "pattern of discontent" continued.

85.     Augustana also told Dr. Grevlos that her complaints "were problematic."

86.     These demotions and statements show direct evidence of retaliation by Augustana in response to Dr. Grevlos engaging in protected conduct.

87.     Dr. Grevlos then requested a notice of a right to sue from the EEOC.  Four days after Augustana was notified of the right to sue, Dr. Grevlos was terminated.

88.     Dr. Grevlos' demotions and ultimate termination were causally and temporally linked to her protected conduct.

89.     Dr. Nesheim engaged in protected conduct when he (1) openly opposed removing Dr. Grevlos as a director and excluding her from department meetings for what he believed were retaliatory reasons; (2) participated in Dr. Grevlos' Title IX complaint; and (3) made complaints about his own treatment, including by filing an EEOC charge and requesting a notice of a right to sue.

90.     While the EEOC charge was pending, Dr. Nesheim received an anonymous complaint regarding his recording of the Vespers performance.  This complaint was clearly pretextual, as many others had recorded and posted videos of the choirs, and the Vespers

15

performance was public and being publicly streamed, and there was no basis to complain about Dr. Nesheim's recording.

91.     Shortly thereafter, Dr. Nesheim received a letter notifying him he was being suspended with pay.

92.     Dr. Nesheim was dismissed a month later, on February 27, 2023, the same day that Augustana received the notice of a right to sue from the EEOC.

93.     Dr. Nesheim's suspension and dismissal were causally and temporally linked to his protected conduct.

94.     Augustana University has no legitimate, non-retaliatory reason for its demotion, suspension and/or termination of either Dr. Grevlos or Dr. Nesheim.

95.     Any reason proffered by the University is mere pretext for retaliation.

96.     As a result of Augustana's conduct, Dr. Grevlos and Dr. Nesheim have suffered (1) monetary damages in the form of lost compensation and benefits through retirement age, because it is unlikely they will be able to obtain a commensurate position given their ages and experience; (2) compensable professional and reputational harm, as well as emotional distress, degradation of character, and humiliation due to the brazen campaign of retaliation by Augustana University; (3) compensable harm due to the violation of their civil rights.

97.     Dr. Grevlos and Dr. Nesheim further seek costs and attorneys' fees, as allowed by 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k), and for such other relief as the Court deems just and equitable.

4863-2672-7781, v. 1

## COUNT II
## SEX DISCRIMINATION UNDER TITLE VII
### (By Dr. Grevlos)

98.     Plaintiffs restate and reallege Paragraphs 1 to 97 of their Complaint as though fully set forth herein.

99.     It is unlawful under Title VII of the Civil Rights Act for an employer to discharge or otherwise discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment on the basis of sex.  42 U.S.C. § 2000e-2(a)(1).

100.    Sex discrimination claims can be proven with either direct or circumstantial evidence.

101.    Direct evidence of discrimination in violation of Title VII is evidence showing a specific link between the alleged discriminatory animus and the adverse employment action, sufficient for a reasonable fact finder to find that an illegitimate criterion actually motivated the adverse employment action.

102.    When circumstantial evidence is provided, a plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment action; and (4) there are facts giving rise to an inference of sex discrimination.

103.    Dr. Grevlos is a female, and thus a member of a protected class.

104.    Dr. Grevlos was indisputably qualified for her position, having served as the most senior full-time faculty member in the Augustana University School of Music, and having received tenure in 2006.  She also served as Chair of the School of Music since

17

2018, as Director of Vocal Studies since 2010, and as Director of the Augustana Summer Music Camp since 2017, until her removal from those positions in 2021.

105.  Dr. Grevlos suffered an adverse employment action when she was removed as Department Chair, Director of Vocal Studies, and Director of the Augustana Summer Music Camp, resulting in losing a portion of her salary; removed as Director of Angelus Choir; and ultimately terminated.

106.  The adverse actions suffered by Dr. Grevlos occurred under circumstances giving rise to an inference of discrimination:

      a.  Dr. Grevlos was the only full-time female tenured faculty member in the School of Music.

      b.  Dr. Svenningsen went on a campaign to discredit her capabilities and competence and Dr. Folliard became complicit in the smear campaign.

      c.  Dr. Folliard and Dr. Svenningsen deliberately excluded Dr. Grevlos from discussions she was entitled to be included in based on their assessment that she was "too emotional."

      d.  Dr. Folliard and Dr. Svenningsen responded angrily to the evaluation of Dr. Grevlos from neutral third parties.

      e.  Despite findings by the neutral parties that Dr. Grevlos' work was excellent, Dr. Folliard and Dr. Svenningsen stripped her of her choirs, responsibilities, and ultimately her job.

      f.  No other similarly situated male employee in the School of Music was subjected to the same treatment.

18

107.    As a result of Augustana's conduct, Dr. Grevlos and has suffered (1) monetary damages in the form of lost compensation and benefits through retirement age, because it is unlikely she will be able to obtain a commensurate position given her age and experience; (2) compensable professional and reputational harm, as well as emotional distress, degradation of character, and humiliation due to the brazen discrimination by Augustana University; (3) compensable harm due to the violation of her civil rights.

108.    Dr. Grevlos further seeks costs and attorneys' fees, as allowed by 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k), and for such other relief as the Court deems just and equitable.

## COUNT III
## AGE DISCRIMINATION
### (By Dr. Grevlos and Dr. Nesheim)

109.    Plaintiffs restate and reallege Paragraphs 1 to 108 of their Complaint as though fully set forth herein.

110.    It is unlawful under the Age Discrimination in Employe Act (ADEA) for an employer to discharge or otherwise discriminate against an employee with respect to their compensation, terms, conditions, or privileges of employment on the basis of the employee's age.  29 U.S.C. § 623(a)(1).

111.    An ADEA claim may be proved through direct or circumstantial evidence.

112.    A plaintiff must show that: (1) they were at least 40 years old; (2) they were qualified for their position; (3) they suffered an adverse employment action; and (4) there is some additional evidence that age was a factor in the employer's decision.

113.    The fourth element of an ADEA claim may be proved by demonstrating that the plaintiff was replaced by someone sufficiently younger to permit the inference of discrimination.

114.    Dr. Grevlos (age 58) and Dr. Nesheim (age 62) are at least 40 years old.

115.    Dr. Grevlos and Dr. Nesheim were both qualified for their positions.

116.    Dr. Grevlos faced adverse employment actions when she was stripped of her positions and job duties, demoted, and ultimately terminated.

117.    Dr. Nesheim faced adverse employment actions when he was stripped of his job duties, suspended, and ultimately terminated.

118.    The adverse actions suffered by Dr. Grevlos and Dr. Nesheim occurred under circumstances giving rise to an inference of discrimination:

       a.    Dr. Grevlos' annual salary, based on 29 years of teaching, was used as a basis to change her teaching load and remove students from her courses, while younger colleagues' teaching loads stayed the same.

       b.    Dr. Nesheim's teaching load was likewise reduced when he was removed from conducting the Augustana Choir and removed as artistic director of Vespers and replaced in those positions by younger faculty.

       c.    Prior to Dr. Nesheim's removal as artistic director, Dr. Folliard had commented to him that anonymous leaders said Vespers was "tiring" and that Dr. Svenningsen called it "old-fashioned."

119.    Augustana has no non-discriminatory reason for its conduct.

120.    Any reason offered by Augustana is mere pretext for discrimination.

121.    Augustana's violations were willful, entitling Dr. Grevlos and Dr. Nesheim to liquidated damages in accordance with 29 U.S.C. § 626(b).

122.    As a result of Augustana's conduct, Dr. Grevlos and Dr. Nesheim have suffered (1) monetary damages in the form of lost compensation and benefits through retirement age, because it is unlikely they will be able to obtain a commensurate position given their ages and experience; (2) compensable professional and reputational harm, as well as emotional distress, degradation of character, and humiliation due to the brazen discrimination by Augustana University; (3) compensable harm due to the violation of their civil rights.

123.    Dr. Grevlos and Dr. Nesheim further seek costs and attorneys' fees, as allowed by 42 U.S.C. § 1988 and 29 U.S.C. § 626(b) and (c), and for such other relief as the Court deems just and equitable.

## COUNT IV
## BREACH OF CONTRACT
### (By Dr. Grevlos and Dr. Nesheim)

124.    Plaintiffs restate and reallege Paragraphs 1 to 123 of their Complaint as though fully set forth herein.

125.    The Augustana University Faculty Handbook (Updated April 17, 2023) creates a contract between Augustana University and its tenured faculty.

126.    Section Four of the Faculty Handbook governs Employment Policies and Procedures.

127.   Section Four states, "[T]he provisions of this section are legally binding on all parties for the specific period covered by a letter of appointment and will not be changed during that period."

128.   This Section therefore creates a binding agreement between the University and its members.

129.   The Section further provides that "tenured faculty members shall be dismissed or their appointments terminated only for adequate cause and with due process."

130.   Dismissal for cause proceedings may be instituted only for one or more of the following reasons: (a) Professional incompetence; (b) Continued neglect of academic duties or professional misconduct despite written warnings; (c) Moral turpitude (behavior that evokes condemnation by the academic community generally); (d) Deliberate and serious violation of the rights and freedoms of fellow faculty members, administrators, or students; (e) conviction of a felony; or (f) falsification of credentials or experience.  Section Four, X.F.1.

131.   The Section further provides that, "except in extreme cases," a process should be followed before dismissal including: (a) meeting with the Department Chair, Provost, FAC, and other appropriate officers, with a view to rectifying alleged professional weaknesses; (2) giving the faculty member a "reasonable time after these discussions begin in order to bring their teaching or other responsibilities up to the desired standards; (3) if the FAC decides to recommend dismissal proceedings, "it shall formulate a statement of reasons, based on evidence" to be delivered by the President of the University to the faculty member; and (4) if the President agrees that dismissal proceedings should be initiated, "the

Provost will discuss the reasons with the individual, and a statement of charges shall be sent to the individual." Section Four, X.F.2.

132. In addition, the Section provides that "temporary suspension with pay" shall occur only when the "Provost determines that there is a strong likelihood that the faculty member's continued presence at the University poses an immediate threat of harm to the University or to individual members of the University community." Section 4, X.G.2.

133. The Section further provides that "dismissal for any reason should, in normal circumstances, be preceded by a written admonition by the appropriate administrative officer describing the alleged problem and warning that the faculty member's contract status is in jeopardy. The warning must also stipulate a period of time within which correction of the alleged problem is expected." Section 4, X.H.

134. Augustana University breached this agreement as to Dr. Grevlos by: failing to follow the process for dismissal, including, failing to give her a reasonable time to remedy any issues; failing to provide her a statement of reasons for termination based on evidence; failing to provide her with a statement of charges; and failing to demonstrate that her termination was for cause, and otherwise failing to adhere to the procedures, process, and standards laid out in the Faculty Handbook.

135. Augustana University breached this agreement as to Dr. Nesheim by: suspending him with pay without demonstrating a "strong likelihood" of "an immediate threat of harm;" failing to follow the process for dismissal, including, failing to give him a reasonable time to remedy any issues; failing to provide him a statement of reasons for suspension/termination based on evidence; failing to provide him with a statement of

charges; and failing to demonstrate that his termination was for cause, and otherwise failing to adhere to the procedures, process, and standards laid out in the Faculty Handbook.

136.    As a result of Augustana's conduct, Dr. Grevlos and Dr. Nesheim have suffered (1) monetary damages in the form of lost compensation and benefits through retirement age, because it is unlikely they will be able to obtain a commensurate position given their ages and experience; and (2) compensable professional and reputational harm, as well as emotional distress, degradation of character, and humiliation due to the brazen contract violations by Augustana University.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Dr. Grevlos and Dr. Nesheim Pray for Judgment as follows:

A.    For an award of damages in an amount in excess of $75,000.00, exclusive of interest and costs, the exact amount to be proven at trial;

B.    For costs, disbursements, and expenses;

C.    For reasonable attorney's fees, pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 2000e-5(k), and 29 U.S.C. § 626(b) and (c), or other applicable law;

D.    For such other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiffs demand a trial by jury for all issues herein.

4863-2672-7781, v. 1

Dated:                              **/s/ Rollyn H. Samp**
                                    Rolly Samp, SD #1511
                                    **SAMP LAW OFFICES**
                                    2101 W 41st Street, Suite 2000
                                    Sioux Falls, SD 57105
                                    Telephone: (605) 339-1020
                                    Fax: (605) 334-5660
                                    rsamp@samplaw.com

                                    Susan E. Ellingstad, MN #0243346
                                    (*pro hac vice* admission pending)
                                    Rachel A. Kitze Collins, MN #0396555
                                    (*pro hac vice* admission pending)
                                    Kailey C. Mrosak, MN #0400190
                                    (*pro hac vice* admission pending)
                                    **LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
                                    100 Washington Ave. South, Suite 2200
                                    Minneapolis, MN  55401
                                    Telephone: (612) 339-6900
                                    Fax: (612) 339-0981
                                    seellingstad@locklaw.com
                                    rakitzecollins@locklaw.com
                                    kcmrosak@locklaw.com

                                    **ATTORNEYS FOR PLAINTIFFS**

25

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| | |

| (b) County of Residence of First Listed Plaintiff _____ | County of Residence of First Listed Defendant _____ |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF<br>THE TRACT OF LAND INVOLVED. |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| | |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
    Plaintiff

☐ 2  U.S. Government
    Defendant

☐ 3  Federal Question
    *(U.S. Government Not a Party)*

☐ 4  Diversity
    *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place<br>of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place<br>of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a<br>Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment<br>    & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted<br>    Student Loans<br>    (Excludes Veterans)<br>☐ 153 Recovery of Overpayment<br>    of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product<br>    Liability<br>☐ 320 Assault, Libel &<br>    Slander<br>☐ 330 Federal Employers'<br>    Liability<br>☐ 340 Marine<br>☐ 345 Marine Product<br>    Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle<br>    Product Liability<br>☐ 360 Other Personal<br>    Injury<br>☐ 362 Personal Injury -<br>    Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury -<br>    Product Liability<br>☐ 367 Health Care/<br>    Pharmaceutical<br>    Personal Injury<br>    Product Liability<br>☐ 368 Asbestos Personal<br>    Injury Product<br>    Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal<br>    Property Damage<br>☐ 385 Property Damage<br>    Product Liability | ☐ 625 Drug Related Seizure<br>    of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal<br>    28 USC 157<br>**INTELLECTUAL<br>PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated<br>    New Drug Application<br>☐ 840 Trademark<br>☐ 880 Defend Trade Secrets<br>    Act of 2016 | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC<br>    3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and<br>    Corrupt Organizations<br>☐ 480 Consumer Credit<br>    (15 USC 1681 or 1692)<br>☐ 485 Telephone Consumer<br>    Protection Act<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/<br>    Exchange |
| | | | **LABOR** | |
| **REAL PROPERTY** | | ☐ 710 Fair Labor Standards<br>    Act<br>☐ 720 Labor/Management<br>    Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical<br>    Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement<br>    Income Security Act | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information<br>    Act<br>☐ 896 Arbitration<br>☐ 899 Administrative Procedure<br>    Act/Review or Appeal of<br>    Agency Decision<br>☐ 950 Constitutionality of<br>    State Statutes |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/<br>    Accommodations<br>☐ 445 Amer. w/Disabilities -<br>    Employment<br>☐ 446 Amer. w/Disabilities -<br>    Other<br>☐ 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate<br>    Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee -<br>    Conditions of<br>    Confinement | **FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff<br>    or Defendant)<br>☐ 871 IRS—Third Party<br>    26 USC 7609<br><br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration<br>    Actions | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1 Original
    Proceeding

☐ 2 Removed from
    State Court

☐ 3 Remanded from
    Appellate Court

☐ 4 Reinstated or
    Reopened

☐ 5 Transferred from
    Another District
    *(specify)*

☐ 6 Multidistrict
    Litigation -
    Transfer

☐ 8 Multidistrict
    Litigation -
    Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
_____

Brief description of cause:
_____

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
    UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____     DOCKET NUMBER _____

DATE _____     SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____