**EXHIBIT A**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH DAKOTA**

| | |
|---|---|
| Lisa Grevlos and Paul Nesheim,<br><br>     Plaintiffs,<br><br>v.<br><br>Augustana University,<br><br>     Defendant. | Case No.: 4:23-cv-04086-KES<br><br>**[PLAINTIFFS PROPOSED]**<br>**STIPULATED ESI PROTOCOL** |

The parties hereby stipulate to the following provisions regarding the discovery of electronically stored information ("ESI") and paper documents in this matter:

## I. GENERAL PROVISIONS

 **a.** This Stipulation and Order will govern the production of electronically stored information ("ESI") and paper documents. This Order supplements the Federal Rules of Civil Procedure and any other applicable orders and rules. This Order will be supplemented by a Stipulated Protective Order in this case, and nothing herein is intended to contradict the terms of that Order.

 **b.** **Definitions**

  **i.** **"Electronically stored information"** or ESI as used herein, means and refers to computer or electronically generated information or data of any kind, stored in or on any storage media located on computers,

mobile devices, file servers, disks, tapes or other real or virtualized devices or media.

ii.    **"Metadata"** means and refers to information about information or data about data, and includes without limitation (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage and/or validity of the electronic file and/or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

iii.   **"Documents"** includes writings, drawings, graphs, charts, photographs, sound recordings, images, and other data, data records or data compilations, stored in any media from which information can be obtained.

c.    **Production Media & Protocol:** Production media for document productions may be made via a secure FTP link provided via email at the time a production letter is emailed or provided by some other method, unless the parties agree otherwise.  If a production cannot be made via FTP, the production media may be a CD-ROM, DVD, external hard drive (with standard PC compatible interface), or USB drive, so long as such production

media is sent no slower than overnight delivery via FedEx, UPS, or USPS. Each item of production media (or in the case of FTP productions, each production transmittal letter) shall include: (1) the type of materials on the media (e.g., "Documents," "OCR Text," "Objective Coding," etc.), (2) the production date, and (3) the Bates number range of the materials contained on such production media item.

d.   **Encryption:** To maximize the security of information in transit, any media on which documents are produced may be encrypted by the producing Party. In such cases, the producing Party shall transmit the encryption key or password to the requesting Party, under separate cover, contemporaneously with sending the encrypted media.

## II.   ESI ISSUE RESOLUTION

The Parties acknowledge that they will be prepared to participate in the resolution of ESI discovery issues; be familiar with the Party's electronic systems and capabilities in order to explain these systems and answer relevant questions; knowledgeable about the technical aspects of e-discovery, including electronic document storage, organization, and format issues; prepared to participate in e-discovery dispute resolutions; know the Party's ESI discovery efforts; and have access to those who are familiar with the Party's electronic systems and capabilities in order to, as appropriate, answer relevant questions.

The Parties agree to cooperate in good faith to resolve any reasonable ESI-related inquiries or issues that arise during the course of discovery, including prompt acknowledgement of ESI issues, and agree to provide substantive responses and

resolutions within no more than five (5) business days.  If a Party believes that an issue will require more than five business days to resolve, the Party will provide an estimated response date and, as applicable, a detailed explanation of the process necessary to answer the question.

## III.   SEARCH TERMS AND CUSTODIANS

### a.   ESI Production Disclosures

    **i.** Simultaneously with the first production of documents, the Parties will disclose the search terms and/or search strings actually used to locate responsive ESI., as well as the list of custodians whose ESI was searched, and the original location of the responsive ESI (e.g., email, network drives, etc.).

    **ii.** Unless otherwise agreed by the Parties, such terms will not be used to search for paper documents and non-custodial ESI, and the Parties shall meet and confer to discuss appropriate search protocols for paper and non-custodial documents.

### b.  Additional Search Terms/Custodians

    **i. Additional Search Terms:** If a Party believes in good faith that additional search terms are necessary, they may request that such terms be added to the list, and explain the basis for the request.  The producing Party may, in good faith, suggest options for narrowing the scope of the request, including on the basis that the proposed additional search terms are overbroad or unduly burdensome as

demonstrated by a hit count.  Any Party may also request a hit count on search terms proposed by either the producing Party or the non-producing Party.

ii. **Additional Custodians:** If a Party believes in good faith that searching the ESI of additional custodians is necessary, they may request that such custodians be added to the list, and explain the basis for the request. The producing Party may, in good faith, suggest options for narrowing the scope of the request, including on the basis that searching the ESI of the proposed additional custodians will not produce relevant information or will be overly duplicative.

c. **Meet and Confer Requirement**: The Parties agree to meet and confer in good faith regarding the addition of custodians or search terms, and to attempt to come to an agreement before seeking the intervention of the Court.

## IV.   GENERAL PRODUCTION FORMAT PROTOCOLS

a. **TIFFs**: All production images will be provided as single-page Group IV TIFFs of at least 300 dpi resolution, with corresponding multi-page text and necessary load files.  Each image will use the Bates number of the first page of the document as its unique file name. Where practical, original document orientation and page size should be maintained (i.e., portrait to portrait and landscape to landscape).  Email will be imaged in portrait orientation. Hidden content, tracked changes, edits, comments, notes, and other similar information viewable within the native file shall, to the extent reasonably

practicable, also be imaged so that this information is captured on the produced image file.  Documents difficult or impracticable to render in TIFF format may be produced in their native format with a placeholder TIFF image stating "Document Produced Natively," unless such documents contain redactions, in which case documents will be produced in TIFF format.

b. **Text Files:**  Each paper document or ESI item produced under this order shall be accompanied by a text file as set out below.  All text files shall be provided as a single text file for each item, not one text file per page.  Each text file shall be named to use the bates number of the first page of the corresponding production item.

c. **OCR:** A producing Party must scan and OCR paper documents.  The Parties will endeavor to generate accurate OCR and will utilize quality OCR processes and technology.  OCR text files should indicate page breaks where possible.  When OCR is used by a producing Party, the Parties acknowledge that, due to the poor quality of the originals, not all documents lend themselves to the generation of accurate OCR. In such instances, the producing Party will also make the documents available for inspection and copying.

d. **ESI:** Emails and any other electronic files will be accompanied by extracted text taken from the ESI item itself, where available.

e. **Production of Native Items**: The Parties agree that ESI shall be produced as TIFFs with an accompanying load file.  The exception to this rule shall be

presentation-application files (e.g., MS PowerPoint), spreadsheet-application files (e.g., MS Excel), personal databases (e.g., MS Access), and multimedia audio/visual files such as voice and video recordings (e.g., .wav, .mpeg, and .avi), for which all ESI items shall be produced in native format. In the case of personal database (e.g., MS Access) files containing confidential or privileged information, the Parties shall meet and confer to determine the appropriate form of production. In addition to producing the above file types in native format, the producing Party shall produce a single-page TIFF slipsheet indicating that a native item was produced. The corresponding load file shall include NativeFileLink information for each native file that is produced. Further, the Parties agree to meet and confer prior to producing native file types other than MS PowerPoint, MS Excel, and multimedia audio/visual file types such as .wav, .mpeg and .avi.  Prior to processing non-standard native files for production, the producing Party shall disclose the file type to, and meet and confer with, the receiving Party on a reasonably useable production format.   Through the pendency of this Litigation, the producing Party shall exercise reasonable, good faith efforts to maintain all preserved and collected native files in a manner that does not materially alter or modify the file or the metadata.

**f.**     **Request for Other Native Files:** Other than specifically set forth above, a producing Party does not need to produce documents in native format.  If a Party would like a particular document produced in native format, it shall

make such a request, provide a specific Bates-range for the documents requested, and explain the reason for its request.

g. **Bates Numbering:**

   i. All images must be assigned a Bates number that must always (1) be unique across the entire document production; (2) maintain a constant prefix and length (ten-digits and 0-padded) across the entire production; (3) contain no special characters or embedded spaces, except hyphens or underscores; (4) be sequential within a given document; and (5) identify the producing Party. To the extent reasonably practicable, the Bates number must also maintain consistent numbering across a family of documents.

   ii. If a Bates number or set of Bates numbers is skipped in a production, the producing Party will so note in a cover letter or production log accompanying the production.

   iii. TIFF images shall be branded in a location that does not obliterate or obscure any part of the underlying images.

h. **Parent-Child Relationships**: Parent-child relationships (the association between an attachment and its parent document) that have been maintained in the ordinary course of business should be preserved. For example, if a Party is producing a hard copy printout of an e-mail with its attachments, the attachments should be processed in order behind the e-mail to the extent reasonably practicable.

i.   **E-Mail Attachments:** If any part of a family is responsive, the entire family of documents will be produced.

j.   **Load Files:** All production items will be provided with a delimited data file or load file.  The load file must reference each TIFF in the corresponding production.  The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load files in the production.

k.   **Color**: Documents containing color need not be produced in color, unless it is necessary to understand the meaning or content of the document.  A Party may, in good faith, request a document be produced in its original colors. For such documents, the requesting Party shall provide a list of Bates numbers of the imaged documents sought to be produced in color.  The production of documents and/or ESI in color shall be made in single-page JPEG format (300 DPI).  All other requirements for productions stated in this Protocol continue to apply.  Parties shall not unreasonably deny requests for documents to be produced in color.

l.   **Confidentiality Designations**: If a particular document qualifies for confidential treatment, pursuant to law or the terms of the Protective Order, the designation shall be branded on the document's image in a location that does not unreasonably obliterate or obscure the underlying images.  To the extent reasonably possible, this designation should also be included in the appropriate data field in the load file.

## V.    PAPER DOCUMENT PRODUCTION PROTOCOLS

a.    **Scanning:** A producing Party must OCR paper documents.  Where OCR is used, the Parties agree that paragraphs V.b. to V.e. shall apply.

b.    **Coding Fields:** The following information shall be produced in the load file accompanying production of paper documents: (a) BegBates; (b) EndBates; (c) BegAttach; (d) EndAttach; (e) Custodian; (f) Confidentiality; (g) Redacted (Y/N).  Additionally, all paper documents will be produced with a coding field named "Paper Document" marked with a "Y."

c.    **Unitization of Paper Documents:** Paper documents shall be logically unitized for production to the extent reasonably practicable.  Therefore, when scanning paper documents for production, distinct documents shall not be merged into a single record and single documents shall not be split into multiple records.

d.    **File/Binder Structures:**

   i.    **Unitization**: Where the documents were organized into groups, such as folders, clipped bundles, and binders, this structure shall be maintained and provided in the load file to the extent reasonably practicable.  The relationship among the documents in a folder or other grouping shall be reflected in proper coding of the beginning and ending document and attachment fields to the extent reasonably practicable.

ii.  **Identification:** Where a document, or a document group, has an identification spine or other label, the information on the label shall be scanned and produced as the first page of the document or grouping.

e.  **Custodian Identification:** The Parties will utilize best efforts to ensure that paper records for a particular Document Custodian are produced in consecutive Bates stamp order.

## VI.  ESI METADATA FORMAT AND PROCESSING ISSUES

a.  **System Files:** ESI productions may be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology.  Other file types may be added to the list of excluded files by agreement of the Parties.

b.  **Metadata Fields and Processing:**

i.  **Date and Time:** No Party shall modify the date or time as contained in any original ESI.

ii.  **Auto date/time stamps:**  ESI items shall be processed so as to preserve the date/time shown in the document as it was last saved, not the date of collection or processing.

iii.  Except as otherwise set forth in this Stipulation, *infra*, ESI files shall be produced with at least each of the data fields set forth in Appendix A that can be extracted from a document.

iv.     The Parties are not obligated to manually populate any of the fields in Appendix A, if such fields cannot reasonably be extracted from the document using an automated process, with the exception of the following fields: (a) BegBates; (b) EndBates; (c) BegAttach; (d) EndAttach; (e) Custodian; (f) Confidentiality; (g) Redacted (Y/N); and (h) NativeLink fields, which should be populated regardless of whether the fields can be populated pursuant to an automated process.

c.   **Redactions**

i.     The Parties agree that where ESI items need to be redacted, they shall be produced solely in TIFF with each redaction clearly indicated.  Any metadata fields reasonably available and unnecessary to protect the privilege or protection protected by the redaction shall be provided.

ii.     If the items redacted and partially withheld from production are PowerPoint- type presentation decks or Excel-type spreadsheets such that the producing Party cannot produce the entire ESI item in native format, the entire ESI item must be produced in TIFF format, including all unprivileged pages, hidden fields and other information that does not print when opened as last saved by the custodian or end-user. For PowerPoint-type presentation decks, this shall include, but is not limited to, any speaker notes. For Excel-type spreadsheets, this shall include, but is not limited to, hidden rows and columns, all cell values, annotations and notes. The producing Party shall also make

reasonable efforts to ensure that any spreadsheets produced only as TIFF images are formatted so as to be legible. For example, column widths should be formatted so that the numbers in the column will display rather than "#########."

   **iii.** If the items redacted and partially withheld from production are audio/visual files, the producing Party shall provide the unredacted portions of the content. The Parties shall meet and confer to discuss the appropriate manner for the producing Party to produce the unredacted portion of the content.

   **iv.** The Parties agree they may redact irrelevant information that is highly sensitive, medical, or personal information (e.g., health information or Social Security Numbers).

**d.**   **Email Collection and Processing:**

   **i.** **Email Domains:** If applicable, the Parties agree to meet and confer on any uniquely identifiable categories of documents (e.g., emails from domains associated with junk email) that may be excluded from any ESI search process.

**e.**   **Special ESI Issues**

   **i.** **Hidden Text:** ESI items shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text or worksheets, speaker notes, tracked changes and comments.

    **ii.**      **Embedded Objects:** Objects embedded in Microsoft Word and .RTF documents, which have been embedded with the "Display as Icon" feature, will be extracted as separate documents and treated like attachments to the document.

    **iii.**     **Compressed Files:** Compression file types (i.e., .CAB, .GZ, .TAR, .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

    **iv.**      **Text Messages:** The Parties will meet and confer regarding the format of text messages produced from Document Custodians' cell phones or other mobile devices.

**f.**    **Miscellaneous Items**

    **i.**      If necessary, the Parties agree to meet and confer in good faith about any other issues that arise and regarding other technology or process that a producing Party proposes to use to streamline the document produced requested by a receiving Party in this case. The Parties agree that they have a mutual interest in conducting discovery in an efficient and cost-effective way to protect the entities that they represent.

## VII.  CLAIMS OF PRIVILEGE AND REDACTIONS

**a.**    **Production of Privilege Logs:** Except as provided below, for any document withheld in its entirety or produced but redacted, the producing Party will

produce privilege/redaction logs in MS Excel format or any other format that permits electronic sorting and searching.  Privilege logs shall be due within 21 days after the applicable substantial completion deadline.

b.    **In-House and Outside Counsel**: The Parties shall use good faith and their best efforts to distinguish between privileged and non-privileged communications, and may not withhold documents from production solely on the basis that an attorney is copied on an email.

c.    **Exclusions from Logging Potentially Privileged Documents**:

  i.    Documents generated after March 30, 2023 between the Parties and their counsel of record do not need to be included on a producing Party's privilege log, unless good cause exists to require that a Party do so.  This provision does not apply to third Parties to the Litigation.

d.    **Privilege Log Requirements:**

  i.    **Metadata Log:** To the extent applicable, each Party's privilege log needs to provide objective metadata (to the extent it is reasonably available and does not reflect privileged or protected information) and an indication of the privilege or protection being asserted.

    1.    **Objective metadata includes the following:**

      a.    A unique privilege log identifier

      b.    Custodian

      c.    CustodianOther or CustodianAll

      d.    File Name

     **e.**    Email Subject

     **f.**    Author

     **g.**    From

     **h.**    To

     **i.**    CC

     **j.**    BCC

     **k.**    Date Sent

     **l.**    Date Received

     **m.**    Date Created

**2.**    In addition to the objective metadata fields, a Party must also include a field on its privilege log entitled "Attorney/Description of Privileged Material," which describes the privilege being asserted and the nature and subject matter of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

**3.**    Further, a Party must manually populate on its privilege log an author and date for any withheld document where that information is not provided by the objective metadata, unless such information is not reasonably discernable from the document or the information is not necessary to evaluate the

claim of privilege in light of the metadata that is discernable and/or the information provided in the Attorney/Description of Privileged Material field. This includes information regarding authors, recipients, and/or other custodians on any lower-level emails, to the extent such information is not discernable from the metadata.

**4.** With respect to the "Email Subject" or "File Name" field, the producing Party may substitute a description of the document where the contents of these fields may reveal privileged information. A Party shall indicate if it has modified such content.

ii. **Email Chains:** Email chains may be logged in one entry, unless there is more than one branch of an email thread (i.e., more than one unique group of recipients), in which case each branch shall be individually logged.

iii. **Withholding and Redacting Documents:** Documents will not be withheld on the basis of privilege unless all or a substantial portion of the document contains privileged information. Otherwise, the documents will be produced with only the privileged portion(s) of the documents redacted.

iv. **Logging Redactions:** If the reason for a redaction is labeled on the face of the document, and the other metadata fields are ascertainable

from the face of the document (i.e., author, recipient, subject matter), then privilege redactions do not have to be logged.  If the reason or basis for the redaction is unclear, it should be logged.

e.   **Challenges to Privilege Claims:** Following the receipt of a privilege/redaction log, a requesting Party may identify, in writing (by Bates/unique identified number), the particular documents that it believes require further explanation.  The producing Party shall endeavor to respond to such a request within 14 days.  The Parties agree to meet and confer to try to reach a mutually agreeable solution before bringing the matter to the Court.

## VIII.  CLAWBACKS

a.   **Non-Waiver:** The production of any material or information shall not be deemed to waive any privilege or work product protection in this Litigation or in any other federal or state proceeding.

b.   **Assertion of a Clawback:** Any Party or non-Party may request the return of any produced material or information on the grounds of privilege or work product protection by identifying it and stating the basis for withholding such material or information from production.

c.   **Clawback Process:** Federal Rule of Evidence 502(d) shall govern the clawback of produced documents or information on the grounds of privilege or work product protection.

## IX.    MISCELLANEOUS PROVISIONS

**a.**    **Objections Preserved:** Nothing in this ESI Protocol shall be interpreted to require disclosure of information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity.  Except as provided expressly herein, the Parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of documents and ESI.

**b.**    **Variations or Modifications**: Variations from this ESI Protocol may be required.  Any practice or procedure set forth herein may be varied by agreement of all affected Parties, which will be confirmed in writing.  Parties shall notify each other of requests for variations or modifications, and the Parties will meet and confer to address any issues in a reasonable and timely manner prior to seeking Court intervention.

## APPENDIX A

| Field Name[1] | Populated For (*Email, Edoc, Calendar, Contact or All*) | Field Description |
|---|---|---|
| BegBates | All | Control Numbers. |
| EndBates | All | Control Numbers. |
| BegAttach | All | Control Numbers (First production bates number of the first document of the family). |
| EndAttach | All | Control Numbers (Last production bates number of the last document of the family). |
| Custodian | All | Custodian name (ex. John Doe). |
| CustodianOther or CustodianAll | All | All custodians who were in possession of a de-duplicated document besides the individual identified in the "Custodian" field. |
| Size | All | Size (in bytes) of the original document. |
| LogicalPath | All | The directory structure of the original file(s). Any container name is included in the path. |
| Hash Value | All | The MD5 or SHA-1 hash value. |
| NativeFile | All | Native File Link. |
| Email Thread ID | Email | Unique identification number that permits threading of email conversations. |
| Thread Index | Email | Message header identifier that permits threading of email chains in review software. |
| EmailSubject | Email | Subject line of email. |
| DateSent | Email | Date email was sent. |
| DateMod | Email, Edoc | Date the document was modified. |
| TimeSent | Email | Time email was sent. |
| ReceiveTime | Email | Time email was received. |
| To | Email | All recipients that were included on the "To" line of the email. |
| From | Email | The name and email address of the sender of the email. |
| CC | Email | All recipients that were included on the "CC" line of the email. |

---

[1] Field names can vary from system to system and even between different versions of systems. Thus, parties are to be guided by these Field Names and Descriptions when identifying the metadata fields to be produced for a given document pursuant to this stipulation.

| Field Name[1] | Populated For (*Email, Edoc, Calendar, Contact or All*) | Field Description |
|---|---|---|
| BCC | Email | All recipients that were included on the "BCC" line of the email. |
| DateCreated | Edoc | Date the document was created. |
| FileName | Email, Edoc | File name of the edoc or email. |
| Title | Edoc | Any value populated in the Title field of the document properties. |
| Subject | Edoc | Any value populated in the Subject field of the document properties. |
| Author | Edoc | Any value populated in the Author field of the document properties. |
| DocExt | All | File extension of the document. |
| TextPath | All | Relative path to the document level text file specified in Paragraph I.C of this ESI Stipulation and Order. |
| Redacted | All | "X," "Y," "Yes," "True," are all acceptable indicators that the document is redacted. Otherwise, blank. |
| Paper | All | "Y" if document is scanned from hard copy in connection with the collection and production of documents in this matter. |
| Confidentiality | All | Indicates if document has been designated as "Confidential" or "Highly Confidential" under the Protective Order. |